IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01124-RBJ

DOROTHY VINING,

    Plaintiff,

v.

THE PROGRESSIVE CASUALTY INSURANCE COMPANY and
METROPOLITAN LIFE INSURANCE COMPANY,

    Defendants.

---

## ORDER

---

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. It is a review on the record of the defendant's denial of accidental death benefits under the terms of a life insurance policy issued to Robert Vining. Following the denial of benefits, Mr. Vining's wife, Dorothy Vining, filed this lawsuit. Through counsel, Mrs. Vining filed a Motion for Determination Based on the Administrative Record on December 10, 2012. [document #18]. Defendant Metropolitan Life Insurance Company did not respond.

**Facts**

In June 2009 Mr. Vining, age 63, was diagnosed with left temporal glioblastoma multiforme, a type of brain cancer. R. 141. He underwent brain tumor resection surgery on June 11 and was discharged on June 20, 2009. *Id.* The next day he was brought into the emergency room after experiencing functional deterioration. *Id.* He was discharged, but on June 22, 2009

he developed pain in his left arm and weakness on his left side and was readmitted to the hospital. *Id.* Anticoagulation medications were started on June 24, 2009. *Id.* While still in the hospital, on June 29, 2009 Mr. Vining fell out of bed and hit his head. *Id.* This fall caused a subdural hematoma. Dr. Brown, a neurosurgeon, recommended against surgical intervention because there was a very poor likelihood of Mr. Vining returning to functional status due to the underlying glioblastoma multiforme. R. 115-16. Mr. Vining's family decided to have Mr. Vining receive comfort care measures only, and he passed away on July 1, 2009. R. at 95.

The medical report following Mr. Vining's death stated that an initial head CT scan taken after the fall on June 29 did not show any bleeding, but a subsequent scan later that day revealed a complex left subdural hematoma with significant mass effect and a small volume subarachnoid hemorrhage. R. 114. The autopsy states that the "proximate cause of death in this patient is his brain tumor (glioblastoma multiforme) with an immediate cause of death due to his subdural hematoma. The mechanism of death is cerebral and cerebellar herniation with compression of the brainstem. The manner of death is natural." R. 145.

Following Mr. Vining's death, Mrs. Vining submitted a life insurance claim pursuant to a life insurance policy that Mr. Vining held for accidental death benefits. R. 96. Mrs. Vining was listed as the beneficiary. *Id.* The plan stated:

> If You or a Dependent sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss described in the SCHEDULE OF BENEFITS, Proof of the accidental injury and Covered Loss must be sent to Us. When We receive such Proof We will review the claim, and if We approve it, will pay the insurance in effect on the date of injury.
> **Direct and Sole Cause** means that the covered Loss occurs within 12 months of the date of the accidental injury and was a direct result of the accidental injury, independent of other causes.
> ...
> EXCLUSIONS

> We will not pay benefits under this section for any loss caused or contributed to by: 1. Physical or mental illness or infirmity, or the diagnosis or treatment of such illness of infirmity . . . .

R. 68.

On October 5, 2009 MetLife informed Mrs. Vining that it was denying her claim. R. 132-33. The letter explained, "As the insured was [undergoing] treatment for an illness at the time of death, the death is not considered Accidental as contemplated under the terms of the plan." R. 133. Mrs. Vining wrote to MetLife on December 10, 2009 asking for more time to appeal its decision to deny benefits. She referred to the accidental fall and subsequent hematoma, noted that she did not understand the listing of the cause of death as natural, and implied that the fall, not the brain tumor, caused his death. R. 136-40.

In a January 19, 2010 report, MetLife stated,

> Appeal has been reviewed and we need to refer this claim to medical. We need to ask medical if they can determine whether or not the medical conditions that the insured had contributed to his death after he had fallen. We need to know if they can determine if death would have resulted from the same fall that caused the subdural hematomas, midline shift, etc had the insured not had any other medical conditions. If medical can not determine whether or not the fall alone would have also resulted in the death, we need to review the claim for payment. If medical can confirm that death would not have been the result after the fall had it not been for the medical condition, then we can uphold our denial.

R. 155.

MetLife referred Mrs. Vining's claim to Dr. E. Del Valle, M.D. on January 19, 2010. R. 159. Dr. Valle issued her report the next day. *Id.* Dr. Valle concluded to a reasonable degree of medical certainty that Mr. Vining's death was the result of his falling and hitting his head, independent of other causes. R. 160-61. However, she also found that Mr. Vining's death was caused and contributed by Mr. Vining's physical infirmity and its treatment. R. 161. Dr. Valle explained that the anticoagulants Mr. Vining was taking contributed to the bleeding, and his brain tissue was friable which made it more susceptible to bleeding. *Id.* Dr. Valle also noted

3

that Mr. Vining was admitted for multiple acute and subacute brain infarcts which resulted in left side weakness and would contribute to a fall if Mr. Vining were to attempt independently to get out of bed. *Id.* Dr. Valle concluded that

> To a reasonable degree of medical certainty, it is my opinion that the medical condition of acute and subacute CVA with involvement to diffuse areas of brain and its concomitant treatment for this condition caused the decedent to sustain a large subdural bleed. The CVA also caused left sided weakness which contributed to the fall. The CVA and its treatment as well as friable brain tissue from glioblastoma all contributed to his death.

*Id*. Dr. Valle went on to opine to a reasonable degree of medical certainty, "that if the same fall had occurred in a patient who was not anticoagulated and had no friable brain tumor along the rim of where it had been debulked, would not have resulted in death. . . . This bleed however was massive due to the anticoagulant effects of Warfin and due to friable tissue."
R. 162. On March 29, 2010 MetLife notified Mrs. Vining that her claim had been re-examined and denied. R. 166.

**Standard**

District court review of a denial or termination of benefits under ERISA is *de novo* unless the benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). If discretionary authority exists, review is under an abuse of discretion (arbitrary and capricious) standard. *Id.* Under the abuse of discretion standard, the administrator's decision will be upheld "so long as it is predicated on a reasoned basis" and supported by substantial evidence. *Adamson v. Unum Life Ins. Co.,* 455 F.3d 1209, 1212 (10th Cir. 2006). Substantial evidence means "more than a scintilla but less than a preponderance." *Rekstad v. U.S. Bancorp.,* 451 F.3d 1114, 1119-20 (10th Cir. 2006).

**Conclusions**

Mrs. Vining acknowledges that the plan administrator had discretionary authority to determine eligibility for benefits, and thus the proper standard is abuse of discretion. Pl.'s Br. 8. She asserts, however, that there is a conflict of interest, because MetLife is both the plan administrator and the insurer; and therefore this court should weigh that conflict of interest in determining the lawfulness of MetLife's decision. *Id.* at 8-9. "If a conflict of interest exists, the reviewing court 'must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict.'" *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1282 (10th Cir. 2002) (quoting *Chambers v. Family Health Plan Corp.,* 100 F.3d 818, 825 (10th Cir.1996)). Because MetLife did not submit a response brief to rebut this perceived conflict, the Court will consider this conflict of interest in evaluating MetLife's decision.

A decision is arbitrary and capricious when there is a mistake of law, bad faith, or a lack of substantial evidence to support the decision. *Id.* Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker]" and is based upon the record as a whole. *Id.* (quoting *United States v. Sandoval,* 967 F. 2d 370, 382 (1992)). Thus, in determining whether substantial evidence supports the administrator's decision, the Court must consider both the evidence that supports its decision as well as any evidence that detracts from its decision. *Id.*

Mrs. Vining argues that MetLife's decision is not supported by substantial evidence because there is inadequate evidence to support its conclusion. Pl.'s Br. 10-11. She asserts that the medical records were inconsistent and necessitated clarification. Specifically, she argues that the medical records are contradictory because they state that the "proximate cause of death in

this patient is his brain tumor (glioblastoma multiforme) with an immediate cause of death due to his subdural hematoma." R. 145. I disagree that this is contradictory. In her review of the medical evidence, Dr. Valle explained that Mr. Vining died because of a subdural hematoma caused by his fall, but if he was not taking anticoagulants and did not have friable brain tissue from the glioblastoma multiforme, his fall would not have been lethal. Thus, it was the combination of a fall while suffering from and receiving treatment for his glioblastoma multiforme that caused Mr. Vining's death.

Mrs. Vining points out that the Certificate of Death incorrectly states that no autopsy was performed. However, in my view the error does not detract from the validity of MetLife's decision. The autopsy report is part of the record and was considered by Dr. Valle. R. 160. Mrs. Vining has not pointed to any medical evidence that contradicts MetLife's determination that Mr. Vining's glioblastoma multiforme caused or contributed to his death. Because MetLife's decision is supported by the hospital records, autopsy records, and the medical opinion of Dr. Valle, MetLife's denial of benefits is supported by substantial evidence.

Mrs. Vining also argues that MetLife's decision is arbitrary and capricious because MetLife did not conduct a meaningful review. To support this, Mrs. Vining argues that a "full and fair review" should have "included more than a cursory review of the records by MetLife's own employee." Pl.'s Br. 11. I cannot agree that Dr. Valle's report is merely a cursory review of the records. The January 19, 2010 report from MetLife referring the case to Dr. Valle shows that MetLife was looking for answers to specific questions as to the cause of Mr. Vining's death. I agree that the turnaround time of one day to complete the report is fast. However, the report appears to be well thought out and discusses the relevant medical records in detail. It answers each of MetLife's questions as to cause of death to a reasonable degree of medical certainty.

Further, although Dr. Valle was hired by MetLife to complete the review, she is a doctor who is board certified in internal medicine. MetLife was able to get clear confirmation as to cause of death from a doctor and based on the medical records before it, and I do not agree that it had an obligation to investigate further. Even conferring MetLife and Dr. Valle less deference because of a conflict of interest, Dr. Valle's report still provides substantial evidence to support MetLife's decision to deny accidental death benefits to Mrs. Vining.

I am sorry that Mr. Vining passed on at such a young (by my standards) age, and I likewise regret that I must contribute further to Mrs. Vining's loss with this decision. However, it is the only decision I can reach.

**Order**

Plaintiff's motion is GRANTED IN PART AND DENIED IN PART. It is granted in the sense that the Court has made its determination on the administrative record as requested. However, it is DENIED to the extent that plaintiff sought a determination that the denial of accidental death benefits was arbitrary and capricious. The Complaint and this civil action are dismissed.

DATED this 1st day of August, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge